# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BENEDICT ZICCARELLI          )
                                   )
        Plaintiff,       )
                                   )
     v.                  )     No: 12-cv-09602
                                   )
RICHARD G. PHILLIPS, JR. an   )     Judge Robert M. Dow, Jr.
individual, and PILOT AIR FREIGHT  )
CORPORATION, a Pennsylvania    )     Magistrate Judge Sidney I. Schenkier
Corporation,               )
                                   )
        Defendants.     )

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................ 3

   I.   Pilots Promises To Mr. Ziccarelli ............................................................. 3

      A.   Franchise ............................................................................................. 3

      B.   Vice Presidency .................................................................................. 4

      C.   Commissions Calculations ................................................................. 5

   II.   Pilots Knowledge About Kathy Cieplevicz ............................................. 6

   III.   Defamation ............................................................................................... 7

ARGUMENT ....................................................................................................... 8

   I.   Plaintiff's Claims For Retaliatory Discharge Are Plausible And Legally Sufficient 8

      A. Defendant's Response Mischaracterizes And Misstates The Complaint In Contravention Of Well Established Law Governing Motions To Dismiss ........... 8

      B. Plaintiff's Claim For Retaliatory Discharge In Violation Of The Public Policies Embodied In Title VII And The Illinois Human Rights Act. ................................. 9

      C. Claim That Defendant Retaliated Against Him For Reporting An Employee's Illegal Activity, Arrest, And Physical Violence, States A Claim For Retaliatory Discharge. ......................................................................................................... 9

   II.   Plaintiff Has Adequately Pled Claims For Defamation ....................................... 13

      A.   Pilot Is Liable For Its Employees Defamation ................................ 13

      B.   The Statements Are Defamatory *Per Se* ........................................ 14

      C.   The Complaint Adequately Pleads *Per Quod* Defamation ............. 16

      D.   Actual Malice Has Been Adequately Pled ..................................... 17

      E.   Publication Has Been Adequately Pled .......................................... 18

III.   Plaintiff Has Adequately Pled Breaches Of Contract .......................................... 19

   A.   The Complaint Contains Allegations Of An Offer........................................... 19

   B.   Pilot's Promise Of A Franchise Is Not Vague.................................................. 20

   C.   Pilot's Promise To Promote Is Enforceable .................................................... 21

   D.   Pilots Promise Of Bonuses Is Clear and Definite............................................ 22

   E.   Consideration Is Adequately Pled .................................................................. 23

   F.   There Was No Modification Precluding Plaintiff's Contractual Entitlements.... 23

IV.   Plaintiff Has Adequately Pled A Claim For Promissory Estoppel ..................... 24

V.   Plaintiff's Claims Under The Illinois Wage Payment And Collection Act Are Adequately Pled Against Phillips And Pilot....................................................... 25

VI.   Plaintiff Has Adequately Pled Claims For Negligence-Failure To Follow Articulate Procedures....................................................................................... 26

VII.   Plaintiff Has Adequately Pled Claims For Negligence-Failure To Ensure A Safe Workplace ......................................................................................................... 27

CONCLUSION.............................................................................................................. 28

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Village of Oswego*, 109 F. Supp. 2d 930, 934 (N.D. Ill. 2000) ................................ 11

*Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 116 (2005).................................................... 32

*Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 622 (7th Cir.2012) ........................... 2

*Arrez v. Kelly Serv. Inc.*, 522 F. Supp. 2d 997, 1002 (N.D. Ill. 2007)......................................... 33

*Ascroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ......................................................................... 1, 3

*Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 557 (2007) ........................................................ 1, 3

*Brown v. GC America, Inc.*, No. 05-C-3810, 2005 U.S. Dist. LEXIS 28065, at *19 (N.D. Ill. Nov. 15, 2005) ............................................................................................................................. 19

*Castellano v. Chicago P.D.*, 129 F. Supp. 2d 1184, 1192 (N.D. Ill. 2001) ................................. 27

*Castro v. Total Home Health, Inc.*, No. 03-C-8486, 2004 U.S. Dist. LEXIS 12793 (N.D. Ill. July 9, 2004) ..................................................................................................................................... 19

*Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) ...................................................................... 17

*Cody v. Harris*, No. 03-CV-934, 2004 WL 783105, at *4 (N.D. Ill. 2004) ................................. 17

*Daoust v. Abbott Labs., No. 05-C-6018,* 2007 WL 118414, at *2 (N.D. Ill Jan. 11, 2007) ... 14, 15

*Douglas v. Hustler Magazine*, 769 F.2d 1128, 1140 (7th Cir. 1985) ........................................... 16

*Evans v. Keystone Consol. Indus., Inc.*, 884 F. Supp. 1209, 1217 (C.D. Ill. 1995)............... 15, 16

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ..................................................................................... 3

*Geary v. Telular Corp.,* 341 Ill.App.3d 694, 701 (1st Dist. 2003) .............................................. 14

*Golden Bear Family Restaurants, Inc. v. Murray*, 144 Ill. App. 3d 616, 627 (1st Dist. 1986).... 32

*Koch v. Illinois Power Co.*, 175 Ill. App. 3d 248, 252 (3d Dist. 1988) ....................................... 24

*Kumaran v. Brotman*, 247 Ill. App. 3d 216 (1993) ...................................................................... 17

*Kuwik v. Starmark Marketing & Admin., Inc.*, 156 Ill. 2d 16, 24 (1993) ............................... 21, 22

*Leweling v. Schnadig Corp.*, 276 Ill. App. 3d 890, 894 (1st Dist. 1995). ................................... 10

*Martinez v. Gonzalez*, 983 F. Supp. 768, 770 (N.D. Ill. 1997) ........................................ 9

*McGreal v. AT&T Corp.*, No. 11-C-08317, 2012 WL 4356683, at *4 (N.D. Ill. Sept. 24, 2012). 2, 3, 26

*Meerbrey v. Marshall Field & Co., Inc.*, 139 Ill. 2d 455, 463 (1990) .......................................... 34

*Moore v. Nutrasweet Co.*, 836 F. Supp. 1387, 1405 (N.D. Ill. 1993) .......................................... 31

*Mueller Co. v. Dept. of Labor*, 187 Ill. App. 3d 519, 524 (4th Dist. 1989) ................................... 33

*Newman v. Hansen & Hempel Co.*, No. 01-C-9871, 2002 WL 31455990, at *7 (N.D. Ill. 2002) 15

*Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 130 (1981) ................................................. 11, 14

*Powell v. XO Servs., Inc.*, 781 F. Supp. 706, 714 (N.D. Ill. 2011) ............................................. 16

*Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 760 (N.D. Ill. 1997) ........................... 23, 26, 27

*Russ v. Pension Consultants Co., Inc.*, 538 N.E.2d 693, 696 (1st Dist. 1989) ........................... 11

*Russo v. Nike, Inc.*, No. 99-C-2726, 2000 WL 347777 (N.D. Ill. 2000) ...................................... 20

*Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir.2010) ................................................................. 1

*Schaffer v. Zekman*, 196 Ill. App. 3d 727, 733 (1st Dist. 1990) ................................................. 20

*Scherer v. Rockwell Int'l Corp.*, 766 F. Supp. 593, 606 (N.D. Ill. 1991) ..................................... 17

*Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007) .................................................. 3

*Stebbings v. Univ. of Chi.*, 312 Ill. App. 3d 360, 372 (1st Dist. 2000) ........................................ 13

*Sunseri v. Puccia*, 97 Ill. App. 3d 488, 493 (1st Dist. 1981) ....................................................... 16

*Taylor v. Canteen Corp.*, 69 F.3d 773, 782-83 (7th Cir. 1995) ...................................... 24, 25, 26

*Tolmie v. United Parcel Service, Inc.*, 930 F.2d 579, 580 (7th Cir. 1991) ............................ 23, 24

*Vajda v. Arthur Andersen & Co.*, 253 Ill. App. 3d 345, 350 (1st Dist. 1993) ....................... 30, 31

*Vance v. Dispatch Management Service*, 122 F. Supp. 2d 910, 910 (N.D. Ill. 2000) ...... 11, 12, 13

*Vickers v. Abbott Labs.*, 308 Ill. App. 3d 393, 404 (1st Dist. 1999) ........................................... 22

*Wallace v. Xerox Corp.*, No. 87-C-8810, 1988 WL 121622, at *4 (N.D. Ill. Nov. 8, 1988).. 33, 34

iv

*Wheeler*, 485 N.E.2d at 376–77 ............................................................................... 11

*Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir.2000) ............................................ 1

### Statutes

Health Care Workplace Violence Prevention Act, 405 ILCS 90/1 ............................. 14

Illinois Wage Payment and Collection Act, 820 ILCS 115/2 ..................................... 31

Victims' Economic Security and Safety Act, 820 ILCS 180/5(11) ............................ 14

### Other Authorities

*Ptasznik v. St. Joseph Hosp.*, 464 F. 3d 691 (7th Cir. 2006) ....................................... 14

*Sexual Harrassment, Wrongful Discharge, and Employer Liability: The Employer's Dilemma*, 43
    Am. U.L. Rev. 191, 230 n. 97 (1993) ................................................................... 14

### Rules

Fed. R. Civ. P. 8 ............................................................................................................. 1

# INTRODUCTION

Plaintiff, Benedict Ziccarelli's ("Mr. Ziccarelli"), Complaint contains sufficient factual matter that is plausible on its face and provides the Court to reasonably infer that Defendants are liable for the alleged misconduct. It is a far cry from the "unadorned, the-defendant-unlawfully-harmed-me accusation" the Supreme Court warned against in *Ascroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and provides far more than labels and conclusions, in compliance with the Supreme Court's instructions in *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 557 (2007). The Complaint contains a short and plain statement of facts as required by Fed. R. Civ. P. 8 that when proven, entitle Mr. Ziccarelli to relief on each of the counts pled. Defendants' motion should be denied in its entirety. Alternatively, should the Court determine there is need for further factual allegations to support any of Mr. Ziccarelli's claims, Mr. Ziccarelli respectfully requests the opportunity to provide such fact to the Court in an amended pleading.

# LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court must "tak[e] all well-pleaded allegations of the complaint as true and view . . . them in the light most favorable to the plaintiff." *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir.2010) (*quoting Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir.2000)). A claim has facial plausibility and survives dismissal when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 622 (7th Cir.2012).

A motion under Rule 12(b)(6) challenges nothing more than the sufficiency of the complaint to state a claim upon which relief may be granted. When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint

and draws all reasonable inferences in the non-movant's favor. *McGreal v. AT&T Corp.*, No. 11-C-08317, 2012 WL 4356683, at *4 (N.D. Ill. Sept. 24, 2012).

To survive a motion to dismiss for failure to state a claim, the complaint must overcome two easy-to-clear hurdles: (1) the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests; and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level. *Id.*

Much of what Defendants complain about is that the Complaint lacks sufficient facts. The sufficiency of Plaintiff's allegations will be discussed below specific to each count. In addition, Plaintiff is providing additional information here, which puts the events in context and which, if required by the Court, could be alleged in an amended complaint.[1] All of the following information in this Response is known and has been known to Defendants at all times relevant to the claims asserted in the Complaint. Thus, Defendants have fair notice of the claims asserted against them and the first hurdle is cleared.

Regarding the second hurdle, Defendants make no claim that the facts alleged in the Complaint are not plausible under the analysis in *Twombly* and *Iqbal*, nor do Defendants appropriately argue that a heightened pleading standard is required by any of the claims contained in the Complaint. Defendants seemingly acknowledge that Federal Rule of Civil Procedure 8 requires a short and plain statement and provides Defendants with sufficient notice on which Plaintiff's claims are based.

---

[1] An amendment should be liberally allowed here where there is no suggestion of undue prejudice, undue delay, bad faith or dilatory motive by Mr. Ziccarelli. Under Federal Rules of Civil Procedure 15(a), leave to amend pleadings should be liberally granted. *See Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007) ("[c]ourts are to use their discretion under Rule 15(a) to liberally grant permission to amend pleadings so long as there is not undue prejudice to the opposing party or undue delay, bad faith or dilatory motive on the part of the movant." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

2

Plausibility in this context does not mean that a court should decide whose version to believe, or which version is more likely than not. Rather, to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen. *McGreal v. AT & T Corp.*, No. 11-C-08317, 2012 WL 4356683, at *4 (N.D. Ill. Sept. 24, 2012) (citations omitted). Mr. Ziccarelli's Complaint satisfies this standard for all counts alleged and Defendants' motion to dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

### I. Pilots Promises To Mr. Ziccarelli

#### A. Franchise

Mr. Ziccarelli was originally hired in Pilot's Chicago office at a time when the Chicago office's performance was bleak. Mr. Ziccarelli dramatically improved the Chicago office's sales performance, turning the office from one that was unprofitable into one that was experiencing record sales.

It was Mr. Ziccarelli's outstanding performance that led to a number of promises by Pilot, specifically Richard (Richie) Phillips, Sr. and Gordon Branov. In November of 2005, it was agreed between Richie Phillips and Mr. Ziccarelli that if the sales performance at the Chicago office remained at its then current level or greater, Mr. Ziccarelli, along with another Pilot employee, Randy Gentile, would be awarded the Chicago office as a franchise office. This agreement was memorialized by email. There is no doubt that this was the parties' agreement and, in fact, a celebratory dinner was held in New York City in January of 2006, as alleged in the Complaint (¶ 11), celebrating that this agreement had been finalized.

The franchise was awarded to Mr. Ziccarelli in November of 2005 and was to be effective in early 2006. Despite continued improvement in the performance of the Chicago office, which remained at or exceeded the then current sales levels, Mr. Ziccarelli and Mr. Gentile were not immediately awarded a franchise. Mr. Ziccarelli was told by Pilot management that the agreement remained in place and that a franchise would be awarded. In fact, the agreement never changed from acceptance in 2005 through its breach in 2006.

It is not presently known to Mr. Ziccarelli the extent to which Pilot documented this franchise agreement because this information and supporting documents are solely within Defendants' possession, custody or control. The extent of this documentation, however, does not undermine the formation of the enforceable agreement between Pilot and Mr. Ziccarelli for the franchise. As sufficiently alleged in the Complaint, this agreement was reaffirmed by Pilot management while Mr. Ziccarelli remained employed by Pilot and was breached on July 19, 2013 when Mr. Ziccarelli was terminated.

### B. Vice Presidency

The promised vice presidency communicated to Mr. Ziccarelli by Gordon Branov was based on performance parameters that were to be met by Mr. Ziccarelli. Mr. Branov did not have authority to provide this promotion without Richard Phillips, Jr.'s approval.[2]

The promise to elevate Mr. Ziccarelli to vice president included his elevation to district manager so that Mr. Ziccarelli was credited with operational experience. It was originally contemplated by Mr. Branov that within three months of the district manager's promotion, Mr. Ziccarelli would be promoted to vice president. The district manager's promotion was thus the initiating step to elevating Mr. Ziccarelli to a vice presidency.

---

[2] Thus, while Gordon Branov, as Defendants' suggest, should be a defendant under the Illinois Wage Payment Act Claim, Mr. Phillips, Jr. should remain as a defendant as well.

4

When Mr. Ziccarelli did not obtain the vice presidency, he repeatedly spoke with Gordon Branov, who reaffirmed that Mr. Ziccarelli was slated for the vice presidency and repeatedly reaffirmed this promotion whenever Mr. Ziccarelli would ask about its status, which was periodic throughout Mr. Ziccarelli's remaining at tenure at Pilot. Mr. Ziccarelli continued to increase the sales performance of the Chicago office in reliance on Pilot's promises.

Pilot, in fact, began its performance of its promise to elevate Mr. Ziccarelli to a vice presidency by elevating Mr. Ziccarelli to the district manager's job as a precursor to the vice presidency and even printing out business cards indicating Mr. Ziccarelli's role as vice president. (See Complaint at ¶ 13.) Pilot failed to perform other aspects of this agreement with Mr. Ziccarelli, by failing to elevate him to a vice presidency and failing to pay him vice presidency wages.

Equally important, Mr. Ziccarelli was performing all of the job responsibilities of a vice president while his job title remained district manager. Thus, Pilot was gaining valuable vice president level services from Mr. Ziccarelli without compensating him accordingly.

Regarding both the promise by Pilot for the new franchise and a vice presidency, Mr. Ziccarelli rejected other job opportunities so that he would enjoy the benefits promised to him by Pilot. Specifically, Mr. Ziccarelli rejected an offer from AFC Worldwide Express to continue working for Pilot in February of 2010.

### C. Commissions Calculations

Regarding Pilot's promise to pay Mr. Ziccarelli certain commissions, the facts contained in the Complaint sufficiently state that certain commissions were to be treated differently. In fact, Pilot began performing under this Agreement when it paid Mr. Ziccarelli commissions for the last half of 2010 specifically regarding the Amazon.com account. (*See* Complaint at ¶ 35.) Even

more specifically, Mr. Ziccarelli's commissions were to be determined based on gross revenue from Amazon.com instead of net revenue, a fact that has always been known to Pilot. Pilot is also aware that Mr. Ziccarelli's commissions are based on Pilot documentation and thus Pilot has full knowledge of the facts underlying Mr. Ziccarelli's claim for unpaid commissions.

## II.    Pilot's Knowledge About Kathy Cieplevicz

Pilot's management and employees at all relevant times knew and never objected to the fact that Mr. Ziccarelli had a consensual relationship with Kathy Cieplevicz, a Pilot employee who was a subordinate of Mr. Ziccarelli. This relationship was not prohibited by any policy or rule at Pilot, and Mr. Ziccarelli was never told by anyone at Pilot that he could not have this relationship.

Pilot's complete awareness of, and acquiescence in, the personal relationship between Mr. Ziccarelli and Ms. Cieplevicz forms the context for the events leading up to Mr. Ziccarelli's wrongful termination. Pilot argues that it was duty bound to investigate Ms. Cieplevicz's purported claims of sexual harassment[3]. It is not clear what, if anything, was alleged by Ms. Cieplevicz and it is equally unclear what actions Pilot actually took in furtherance of this purported investigation. What is clear, however, is that (1) Ms. Cieplevicz never reported any incidents of sexual harassment to Pilot before she was subject to termination for cause for competing with Pilot and assaulting Mr. Ziccarelli's girlfriend; (2) Mr. Ziccarelli was never subject to any adverse employment action based on Ms. Cieplevicz's purported allegations of sexual harassment; and (3) Mr. Ziccarelli was not terminated for sexually harassing Ms.

---

[3] Pilot's Motion inappropriately converts the Complaint's allegations that Ms. Cieplevicz threatened to take her knowledge of other improprieties not involving Mr. Ziccarelli at Pilot public into specific threats levied directly against Mr. Ziccarelli for engaging in sexual harassment against her in order to justify Pilot's purported investigation. Pilot's view of events is not properly considered on a Rule 12(b)(6) motion.

Cieplevicz, but ostensibly for events revolving around two incidents with other co-workers occurring six months and six years ago. (*See* Complaint at ¶¶ 20-21, 29.)

## III. Defamation

What is equally clear is that Pilot's management and employees' knowledge of Mr. Ziccarelli's consensual relationship with Ms. Cieplevicz provided Pilot and its employees with actual knowledge of the falsity that Mr. Ziccarelli engaged in any sexual harassing conduct against Ms. Cieplevicz. This known fact, combined with the known fact that Mr. Ziccarelli was not terminated for engaging in sexual harassment of Ms. Cieplevicz, leads to the inescapable conclusion that anyone who transmitted statements to the effect that "Mr. Ziccarelli was terminated for engaging in sexual harassment" renders those statements not only categorically false, but falsities made with actual malice in light of the true facts known by Pilot managers and employees.

The Complaint specifies the Pilot personnel that Mr. Ziccarelli currently believes communicated the defamatory statements contained in the Complaint. Not only were these statements made by Pilot management and its employees internally to other Pilot management and employees, but were also communicated to third parties outside of Pilot. Rachel Chapman (Pilot), Kristen Limani (Pilot), Jay Farella (Satellite Motor Freight), David Norkett (CGL), Andrew Karpov (Pilot), Shelly Brick (Pilot), Bud Morin (Pilot), Mike Hess, Sr. (Associated Global Services), and Mike Hess, Jr. (Pilot) are the individuals Mr. Ziccarelli has knowledge of currently. Moreover, Jim Tucci, the president of (Associated Global Services) with whom Mr.

Ziccarelli was interviewing was told by a Pilot employee that Mr. Ziccarelli was fired for harassment.  Mr. Ziccarelli did not obtain a position from Mr. Tucci.[4]

ARGUMENT

I. **Plaintiff's Claims For Retaliatory Discharge Are Plausible And Legally Sufficient**

A. **Defendant's Response Mischaracterizes And Misstates The Complaint In Contravention Of Well Established Law Governing Motions To Dismiss**

Defendant's argument regarding Plaintiff's retaliatory discharge claim relies on the mischaracterization and misstatement of the Complaint in order to reform the facts to Defendant's articulated objections.  Defendant's mischaracterizations are an attempt to present the Mr. Ziccarelli's allegations in a light most favorable to *defendant*, rather than a light most favorable to the Plaintiff as required by legal precedent.  *See Martinez v. Gonzalez*, 983 F. Supp. 768, 770 (N.D. Ill. 1997) ("[o]n a motion to dismiss, the court will assume the truth of all alleged facts and construe them liberally to the plaintiff and make all reasonable inferences in plaintiff's favor.").

There is nothing in the plaintiff's Complaint that would support the defendant's conclusion that "Plaintiff contends that his termination 'had everything to do with appeasing Kathy Cieplevicz's termination demands,' . . . '[and] had nothing to do with the Kathy Cieplevicz incident.'"  (Def. Mem. at 3.)  These allegations that the Defendant attempts to equate are two separate and distinct occurrences.  The first allegation relates to Kathy Cieplevicz's apparent extortion demands to Pilot, which included Pilot's termination of Mr. Ziccarelli.  (Complaint at ¶ 32.)  The second allegation relates to Mr. Ziccarelli's termination being purportedly based on two prior incidents: 1) the May 2006 altercation with Mr. Cortese; and 2)

---

[4] Mr. Ziccarelli also believes that Gordon Branov, his immediate supervisor at Pilot, also conveyed defamatory information to third parties in addition to the Pilot employees identified in paragraph 39 of the Complaint.

the February 2012 verbal altercation with Mr. Bullard, neither of which involved Kathy Cieplevicz. (Complaint at ¶ 31.) Therefore, there is nothing in the Complaint that would justify the Defendant's conclusion that "predicate allegations of the Complaint as well as other allegations in Count I directly contradict Plaintiff's claim for retaliatory discharge." (Def. Mem. at 2–3.)

**B. Plaintiff's Claim For Retaliatory Discharge Was In Violation Of The Public Policies Embodied In Title VII And The Illinois Human Rights Act.**

Mr. Ziccarelli's retaliatory discharge claim is partially based on the fact that Defendant's retaliation against him was because he brought to Pilot's attention instances of improper behavior occurring at Pilot. While a retaliatory discharge claim in violation of Title VII and the Illinois Human Rights Act needs to be formally filed as a Charge of Discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, that fact does not affect a retaliatory discharge claim that can go forward on the grounds that the Defendant retaliated against Mr. Ziccarelli for reporting Kathy Cieplevicz's illegal activity and unlawful conduct, and his resulting concerns for workplace safety.[5] Mr. Ziccarelli's retaliatory discharge claims based on this reporting activity should go forward.

**C. Claim That Defendant Retaliated Against Him For Reporting An Employee's Illegal Activity, Arrest, And Physical Violence, States A Claim For Retaliatory Discharge.**

Defendant argues that workplace safety is too vague a policy to support a public policy claim. (Def. Mem. at 5.) Defendant's assertion is incorrect. Mr. Ziccarelli's complaint states that he was discharged in retaliation for reporting the arrest and unlawful conduct of Ms. Cieplevicz and his resulting concerns for workplace safety to the Defendant. (Complaint at ¶ 42–44.) Illinois courts have consistently held that policies affecting the health and safety of

---

[5] Due to the work-share agreement between the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, Plaintiff has until May 15, 2013 to file his Charge of Discrimination. This date is in accordance with the 300-day filing deadline.

9

citizens will support a retaliatory discharge claim. *Leweling v. Schnadig Corp.*, 276 Ill. App. 3d 890, 894 (1st Dist. 1995).

When an employee refuses to engage in illegal or wrongful conduct or reports such conduct, Illinois courts have recognized a cognizable tort when the employer retaliates against the employee for his actions. *Russ v. Pension Consultants Co., Inc.*, 538 N.E.2d 693, 696 (1st Dist. 1989). Courts have sustained such claims based on reporting or refusing to violate public health and safety issues, criminal and noncriminal violations, and federal violations. *Id.*; *See Anderson v. Village of Oswego*, 109 F. Supp. 2d 930, 934 (N.D. Ill. 2000) (testifying in a civil case against employer); *Wheeler*, 485 N.E.2d at 376–77 (refusing to violate federal regulations concerning radioactive material); *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130 (1981) (reporting theft of a two dollar screwdriver); *Russ*, 538 N.E.2d at 697 (refusing to violate federal tax regulations).

In *Vance v. Dispatch Management Service*, the plaintiff had a personal relationship with her co-worker and supervisor at Dispatch Management Service. 122 F. Supp. 2d 910, 910 (N.D. Ill. 2000). They had purchased a house together, but things ended badly and she moved out. *Id.* Subsequently, the plaintiff suffered from a fair amount of abuse from her co-worker. *Id.* The plaintiff complained to the management team, which in turn referred her to human resources. *Id.* After her co-worker shoved her into a chair and against the wall with such force that she required medical attention, she obtained an emergency protective order against him. *Id.* She was then fired on the stated grounds that she was absent from the office. *Id.* The plaintiff sued Dispatch for retaliatory discharge on the grounds that she lost her job because she filed an emergency protective order against her co-worker when he injured her. *Id.* at 910-11. The court held that firing the plaintiff for filing a protective order would violate health and safety policy. *Id.* at 911.

The court found that the "action plausibly struck at the heart of a citizen's rights" and that "the exercise of one's rights to seek the protection of the courts in the face of physical threats from one's current or former domestic partners would appear to involve the protection of each citizen's health and welfare." *Id.*

Here, as alleged in the Complaint, Ms. Cieplevicz, a fellow employee of Mr. Ziccarelli, arrived at his residence at 10:30 p.m., unannounced, uninvited, and intoxicated. Ms. Cieplevicz was angry that Mr. Ziccarelli had confronted her about her competing business. Ms. Cieplevicz attacked Mr. Ziccarelli's girlfriend, the police were called, and Ms. Cieplevicz was arrested for battery. Mr. Ziccarelli reported both the arrest and wrongful conduct of Ms. Cieplevicz to his immediate supervisor at Pilot, Gordon Branov. Together they decided to terminate Ms. Cieplevicz for cause. (Complaint at ¶¶ 22-24.) Mr. Ziccarelli was also fired in retaliation for his reporting the arrest and conduct of Ms. Cieplevicz, and his resulting concerns for workplace safety to Pilot supervisors. (Complaint at ¶¶ 42-43.)

Similar to the circumstances in *Vance*, Mr. Ziccarelli presents sufficient evidence to show that "health and safety policy would be clearly violated if a citizen were fired" because he reported an employee's physical abuse. 122 F. Supp. 2d at 911. While *Vance* involved the filing of a protective order in response to her co-worker's abuse, an internal complaint of similar misconduct to supervisory officials remains protected under Illinois law. *See Stebbings v. Univ. of Chi.*, 312 Ill. App. 3d 360, 372 (1st Dist. 2000). Mr. Ziccarelli's complaint regarding Cieplevicz' behavior furthered the protection of the safety of Mr. Ziccarelli himself, other Pilot employees, and the general safety of citizens who have been subject to the physically threatening actions of employees. Mr. Ziccarelli's claim of retaliatory damages is grounded in public policy that ensures the protection of citizens' health and safety. *See id.* at 1146.

Illinois courts have recognized there is a level of imprecision necessarily involved in attempting to identify a "clearly mandated public policy" for purposes of retaliatory discharge and thus have determined that "it is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Daoust v. Abbott Labs., No. 05-C-6018,* 2007 WL 118414, at *2 (N.D. Ill Jan. 11, 2007) (quoting *Palmateer,* 85 Ill. 2d at 133); *see also Geary v. Telular Corp.,* 341 Ill.App.3d 694, 701 (1st Dist. 2003) ("[t]here is no precise definition of what constitutes a clearly mandated public policy.")

"There is no public policy more important than or more fundamental than the one favoring the effective protection of the lives and property of citizens." *Palmateer*, 85 Ill. 2d at 132. This policy is contained in the Constitution of the State of Illinois in the preamble, "in order to provide for the health, safety and welfare of the people." Ill. Const. 1970, Preamble. In addition, a number of statutes have been enacted to address concerns with violence in the workplace, including the Health Care Workplace Violence Prevention Act, 405 ILCS 90/1 *et seq.* and the Victims' Economic Security and Safety Act, 820 ILCS 180/5(11). "Together, these statutes demonstrate that Illinois' overall concern for the safety of its citizens extends into the workplace." *Daoust*, 2007 WL 118414, at *3. In a retaliatory discharge situation, the reported behavior need not violate any specific statute in order for a court to determine that Illinois public policy has been implicated. *Id.* There is no doubt that an Illinois public policy is at issue here. "Illinois courts have consistently held that policies affecting the health and safety of citizens will support a retaliatory discharge claim." *Leweling,* 276 Ill. App. 3d at 894 .

Thus, Mr. Ziccarelli's retaliation claim based on his informing Pilot of other instances of harassment and inappropriate behavior is preempted, his retaliation claim based on workplace safety is not. Mr. Ziccarelli has demonstrated his participation in protected activity and that his

termination violated a clear mandate of public policy. Defendant's Motion to Dismiss Count I should be denied.

## II.     Plaintiff Has Adequately Pled Claims For Defamation

To state a claim for defamation, plaintiff must allege that (1) the defendant made a false statement about him; (2) there was an unprivileged publication of a defamatory statement to a third party; and (3) the publication damaged him. *Newman v. Hansen & Hempel Co.*, No. 01-C-9871, 2002 WL 31455990, at *7 (N.D. Ill. 2002). An employer has a qualified privilege to communicate or publish allegedly defamatory statements to those in the company who have a legitimate employment interest in the statements. *Evans v. Keystone Consol. Indus., Inc.*, 884 F. Supp. 1209, 1217 (C.D. Ill. 1995). To overcome such a qualified privilege, a plaintiff is required to plead and prove that the statements were made with actual malice. *Id.*

### A.   Pilot Is Liable For Its Employees Defamation

Under Illinois law, a theory of *respondeat superior* may be applied to defamation actions. *Douglas v. Hustler Magazine*, 769 F.2d 1128, 1140 (7th Cir. 1985). *Respondeat superior* will attach if the employee is acting to further the interests of the employer. *Powell v. XO Servs., Inc.*, 781 F. Supp. 706, 714 (N.D. Ill. 2011). Even if an employee is alleged to be acting *both* in furtherance of his own interests and those of his employers, *respondeat superior* is still applicable. *Id.* at 714-15; *see also Sunseri v. Puccia,* 97 Ill. App. 3d 488, 493 (1st Dist. 1981) (where employee acts with a dual purpose, liability under *respondeat superior* may attach). Thus, while Mr. Ziccarelli could not possibly allege the true motivation behind anyone uttering defamatory statements at this stage in the litigation, he does not have to.

## B. The Statements Are Defamatory *Per Se*

In Illinois, proof of injury is not necessary where the alleged libelous statement is libelous *per se*—the words are obviously and naturally harmful. *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). Two of the categories of words that meet this requirement are words which impute inability to perform or want of integrity in the discharge of duties of office or employment and words that prejudice a particular party in his profession or trade. *Id.* In order for a statement to fall within one of these categories, it must relate to the plaintiff in his professional capacity. *Cody v. Harris*, No. 03-CV-934, 2004 WL 783105, at *4 (N.D. Ill. 2004). In some instances, personal integrity may be so intertwined with job skills that an attack up on it could constitute defamation *per se*. *Id.* (citing *Kumaran v. Brotman*, 247 Ill. App. 3d 216 (1993) (holding that part of a teacher's job is to set a good example and serve as a role model for students)).

In this case, Defendants argue that false allegations of "sexual harassment" are not defamatory *per se*. That is incorrect. *See Scherer v. Rockwell Int'l Corp.*, 766 F. Supp. 593, 606 (N.D. Ill. 1991) ("[t]here is of course little question that if shown to be false, accusations of sexual harassment on the job—so obviously impugning the integrity of Scherer in the discharge of his employment duties and so incapable of innocent construction—would indeed constitute defamation *per se*."); Sara Needleman Kline, *Sexual Harrassment, Wrongful Discharge, and Employer Liability: The Employer's Dilemma*, 43 Am. U.L. Rev. 191, 230 n. 97 (1993) ("[e]mployees discharged for sexual harassment also may sue their employer for various tort claims, such as defamation and intentional infliction of emotional distress."); *see also Ptasznik v. St. Joseph Hosp.*, 464 F. 3d 691 (7th Cir. 2006) ("Illinois law recognizes a *per se* cause of action

for defamation when the defamatory statements are so serious that reputational injury may be presumed.").

Defendants' Motion mischaracterizes the defamatory statement on which Count II is based. As specifically alleged in the Complaint, the defamatory statement at issue is that Mr. Ziccarelli was terminated for engaging in sexual harassment, or words to that effect. Thus, that statement connotes not only that Mr. Ziccarelli was alleged to have engaged in sexual harassment, but that was found to have actually engaged in such behavior, and was then terminated for doing so. That statement is far more serious and far more damaging to Mr. Ziccarelli's reputation. It also embodies two levels of false statements, first that Mr. Ziccarelli engaged in sexual harassment, which is false, and second that Mr. Ziccarelli was terminated for engaging in sexual harassment, which is also false. There is no support in Illinois law that would allow such statements to escape liability as defamatory, unless they are true. Here, the Complaint makes clear that they are not.

Defendants argue that *Brown v. GC America, Inc.* "is on point and should control" despite its obvious and numerous dissimilarities. There, the alleged defamatory statement was: "the issue of sexual harassment allegations against you has not been resolved." *Brown v. GC America, Inc.*, No. 05-C-3810, 2005 U.S. Dist. LEXIS 28065, at *19 (N.D. Ill. Nov. 15, 2005). The court held that that statement was not slanderous *per se* and buttressed its holding with language from *Castro v. Total Home Health, Inc.*, No. 03-C-8486, 2004 U.S. Dist. LEXIS 12793 (N.D. Ill. July 9, 2004), which held that statements that plaintiff had committed sexual harassment were also not slanderous *per se*. Neither of those cases controls a situation in which the slanderous remarks are that the plaintiff was terminated from employment because of sexual harassment. In fact, where the court in *Castro* found that the statements "do not address the

plaintiff's ability in his or her profession," 2004 U.S. Dist. LEXIS 12793, at *4, the opposite is true here. Being terminated as a result of false claims of sexual harassment, as Mr. Ziccarelli here has alleged, clearly demonstrates a "want of integrity in employment," impugned Mr. Ziccarelli's ability in his profession, and may be defamatory *per se*. *Brown*, 2005 U.S. Dist. LEXIS 28065, at *18.

### C. The Complaint Adequately Pleads *Per Quod* Defamation

An action of defamation *per quod* is established where words not defamatory on their face are rendered so by extrinsic facts, which must be alleged. *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 733 (1st Dist. 1990). This claim should be controlled by *Russo v. Nike, Inc.*, No. 99-C-2726, 2000 WL 347777 (N.D. Ill. 2000). There, plaintiff employee appeared to have pleaded defamation *per quod* for alleged statements amounting to sexual harassment. *Id.* at *1. Plaintiff claimed that, as a result of the statements, his work environment became hostile, malicious, and eventually intolerable, which forced his resignation. *Id.* at *2. The court denied defendant's motion to dismiss, finding that the "basic substance of the defamatory statements" was adequately alleged, even noting that plaintiff "should have an opportunity to discover the exact details of the [sic] Nike's conduct through the discovery process." *Id.* at *4. In denying defendant's motion, the court necessarily found that damages were properly pled, though it did not discuss that element.

Even if Mr. Ziccarelli is required to plead more than he has, he can do so as noted by the factual background discussed above. Specifically, Mr. Ziccarelli can allege that prospective employers (e.g. Jim Tucci) were told the defendant's statement to the effect that Mr. Ziccarelli had been terminated for engaging in sexual harassment. Mr. Ziccarelli did not obtain a position from Mr. Tucci and can so allege his belief and will prove that it was because of statements Mr.

Tucci heard from Pilot. Under these circumstances, Mr. Ziccarelli has clearly pled special damages necessary to maintain a claim for defamation *per quod*.

## D. Actual Malice Has Been Adequately Pled

Defendant's argument that Mr. Ziccarelli did not plead facts sufficient for actual malice, is both incorrect and irrelevant. The Complaint alleged that Pilot, through Gordon Branov, terminated Mr. Ziccarelli based on two incidents having nothing to do with sexual harassment. (Complaint at ¶ 29.) Mr. Branov and others later told numerous Pilot employees that Mr. Ziccarelli was terminated because of the sexual harassment claims. The only explanation for these actions is that Mr. Branov and others knowingly and willfully disseminated the false information. It is unclear why they would do so since there was no legitimate business purpose for making such statements to others, both within and outside of Pilot.

Even so, Defendant's "actual malice" argument is largely irrelevant because it mischaracterizes the law in Illinois. Where a qualified privilege exists, a plaintiff must prove that the defendant either intentionally published the false material or displayed a reckless disregard as to the matter's falseness. *Kuwik v. Starmark Marketing & Admin., Inc.*, 156 Ill. 2d 16, 24 (1993). The reckless disregard probe requires publication of the material "despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." *Id.* If the court finds that a conditional privilege exists,[6] and thus the communication was made in good faith, the plaintiff is required to make a showing that the privilege was abused. *Id.* at 26 (acknowledging the apparent oddity in finding that a defendant made a statement in good faith and with actual malice). "[A]n abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly

---

[6] A conditional privilege exists if the following elements are present: (1) good faith in making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to the proper parties.

investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Id.* at 30. Indeed, "the *Kuwik* decision expanded the previous definition of abuse of a qualified privilege" from a showing of actual malice to an examination of "any reckless acts leading to the defamation." *Vickers v. Abbott Labs.*, 308 Ill. App. 3d 393, 404 (1st Dist. 1999).

In this case, the Complaint more than adequately alleges a reckless disregard for Mr. Ziccarelli's rights, if not actual malice. It alleges in great detail the stated reasons for Mr. Ziccarelli's termination, none of which included the false claims of sexual harassment (Complaint at ¶ 29), and that Pilot employees spread the accusation that Mr. Ziccarelli was terminated for sexual harassment. (Complaint at ¶ 30.) To provide even greater specificity, the Complaint goes on to list the names of the Pilot employees who spread the accusation (Complaint at ¶ 39). Mr. Ziccarelli, as noted above, can further identify some of the recipients of the defamatory statements. Taken as true for the purposes of a motion to dismiss, Mr. Ziccarelli has alleged more than enough facts to indicate a reckless disregard for the veracity of the allegations being disseminated by Defendants.

### E. Publication Has Been Adequately Pled

Defendant's claim that Mr. Ziccarelli has not properly pleaded publication is similarly off the mark. Mr. Ziccarelli's complaint plainly alleges that publication was made by Pilot employees Steve Bullard, Rachel Chapman, Kristen Limini, Manny Silva, David Gilland, Andrew Karpov, Bud Moran, and David Norkette. (Complaint at ¶ 39) As noted above, Mr. Ziccarelli can identify some of the third party recipients and discovery will reveal other third parties and Pilot recipients. In fact, the president of a company that Mr. Ziccarelli interviewed with following his termination was told by a pilot employee that Mr. Ziccarelli was fired for

sexual harassment.   This is not a "legal conclusion," as Defendant claims, but a concise

depiction of the facts detailing Defendant's defamatory publication of untrue allegations.

## III.   Plaintiff Has Adequately Pled Breaches Of Contract

### A. The Complaint Contains Allegations Of An Offer

Defendant mischaracterizes the law regarding oral employment offers by suggesting that

all must be "clear and definite." Rather, a heightened pleading standard only applies when,

unlike here, the plaintiff seeks to defeat the Illinois presumption that employment is at-will.

*Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 760 (N.D. Ill. 1997) (distinguishing *Wilder v.*

*Butler Manufacturing Co.*, 178 Ill. App. 3d 819 (3d Dist. 1989)) on the grounds that plaintiff in

*Wilder* was claiming lifetime employment, but Razdan did not claim permanent employment, "so

the heightened pleading requirements of *Wilder* [did] not apply."). Defendant cites to *Tolmie v.*

*United Parcel Service, Inc.,* 930 F.2d 579, 580 (7th Cir. 1991), with great frequency, but

nonetheless omits its relevant language regarding the "clear and definite" standard.

In *Tolmie*, the only question for the court was whether or not the plaintiff had sufficiently

pleaded an offer for employment that was not "at-will." 930 F.2d at 580.   Reciting the governing

rules, the court stated that employment contracts are presumed to be at-will unless the parties

contracted otherwise. *Id.* In *Tolmie*, the alleged attempt to "contract otherwise" was done orally,

and the court cited to *Koch v. Illinois Power Co.*, 175 Ill. App. 3d 248, 252 (3d Dist. 1988), to

say that oral offers must encompass terms that are "clear and definite," *Id.* at 581.   However, the

language quoted from *Koch* states only that, "[to] be valid, an oral contract *for permanent*

*employment* needs to contain a clear and definite agreement." *Koch*, 175 Ill. App. 3d at 252

(emphasis added).   Indeed, the policy reasoning in *Tolmie* supports this interpretation: "the

requirement of a clear and definite offer prevents employers from incurring contractual liability

for informal statements that were never intended to be anything more than expressions of 'long continuing good will and hope for eternal association.'" *Tolmie*, 930 F.2d at 581. Because Mr. Zicarrelli is not alleging permanent employment, this reasoning is inapposite.

In *Taylor v. Canteen Corp.*, 69 F.3d 773, 782-83 (7th Cir. 1995), the court found that an employer's oral promises of continued employment constituted "clear and definite" offers. In *Taylor*, plaintiff employee was concerned about accepting a promotion because he would lose his union benefits. *Id.* His employer said that he could work "as long as he wished" and that he could have the job "until he retired or decided he didn't want the job." *Id.* at 783. The court found that, "given the language used and the context" in which the employer's statements were made, the promise was sufficiently "clear and definite" to preclude summary judgment. *Id.* Thus, and although Mr. Ziccarelli is not seeking to enforce an offer of permanent employment, it is clear that the offers for a franchise and a promotion made to him were more specific than the offer deemed adequate in *Taylor*.

## B. Pilot's Promise Of A Franchise Is Not Vague

Defendant asserts that the award of a franchise to Plaintiff was not pleaded with sufficient particularity. To the contrary, the Complaint sets out that an offer was made and provides the month and year during which Plaintiff was invited to a celebratory dinner to acknowledge the transaction. (Complaint at ¶ 11) During that dinner, it was made clear that the franchise would be awarded to Plaintiff in early 2006. Although Pilot offers the Court a roadmap of arbitrary terms that it believes *could* have been included in the complaint, such as the fees and licensing agreements associated with the franchise, Defendant predictably offers no authority to indicate that such inclusions are necessary. (Def. Mem. at 14-15.) The allegations set forth by Plaintiff of an offer for a franchise, acceptance, and an ornate dinner to commemorate the occasion more

than adequately "present a story that holds together" to survive a motion to dismiss. *McGreal*, 2012 WL 4356683, at *4. Indeed, for Mr. Ziccarelli to attend a dinner in his honor with the owner of Pilot certainly is enough to make Mr. Ziccarelli believe that an offer had been made.[7]

### C. Pilot's Promise To Promote Is Enforceable

Mr. Ziccarelli's promotion claims are adequate, even under the "clear and definite" standard. In *Taylor v. Canteen Corp.*, 69 F.3d 773, 782-83 (7th Cir. 1995) plaintiff employee was concerned about accepting a promotion because he would lose his union benefits. *Id.* His employer said that he could work "as long as he wished" and that he could have the job "until he retired or decided he didn't want the job." *Id.* at 783. The court found that, "given the language used and the context" in which the employer's statements were made, the promise was sufficiently "clear and definite" to preclude summary judgment. *Id.* Although Mr. Ziccarelli is not seeking to enforce an offer of permanent employment, the offers he did receive for a promotion (and for the franchise) were appreciably more specific than the offer deemed adequate in *Taylor*. Mr. Ziccarelli was offered a specific position, a specific salary, and the offer was in direct response to a rival company's offer of the same amount.

Similarly, in *Razdan v. General Motors Corp.*, 979 F. Supp. 755, 759-60 (N.D. Ill. 1997), the plaintiff received an oral employment offer for a full-time position at a salary of $72,800 "within a few months" of his hiring as a contract employee. The court held that contract was sufficient to constitute an oral offer and the plaintiff's breach of contract claim was allowed to proceed. *Id.* at 760.[8] The same should be said here.

---

[7] In any event, Defendant selectively plucks language from *Tolmie v. UPS, Inc.*, 930 F.2d 579, 581 (7th Cir. 1991), for the proposition that an offer must be "clear enough that an employee would reasonably believe that an offer has been made." (Def. Mem. at 15.) As will be more fully explained *infra*, that language is applicable only in the context of an offer that purports to defeat the presumption of at-will employment. It has no place in the foregoing argument.

[8] As a separate matter, the plaintiff claimed that his employer's statement that he could keep his position "for as long as he wished" constituted an offer of permanent employment. *Id.* The court found that this offer was

## D. Pilots Promise Of Bonuses Is Clear and Definite

Defendant's arguments regarding the lack of specificity of Mr. Ziccarelli's bonus offer are wholly meritless. Defendant admits Mr. Ziccarelli alleged that he would receive a bonus "computed on gross revenues derived by Pilot from Amazon.com instead of net revenues per the formula which Mr. Ziccarelli was previously working." (Complaint at ¶ 16.) Defendant then takes a shotgun approach, alleging fatal generality of everything from the bonus's computation structure to definitions of its commonly used terms. (Def. Mem. at 16.) However, plaintiff does not "even need to plead facts under the liberal system of notice pleading-whether he can ultimately offer evidence in support of his claims is appropriately decided on a summary judgment motion, not on a motion to dismiss."[9] *Castellano v. Chicago P.D.*, 129 F. Supp. 2d 1184, 1192 (N.D. Ill. 2001).

Plaintiff has made abundantly clear that he previously received a bonus based on net revenues from Amazon.com, that his new bonus would be based on the gross revenues instead, and that his bonus would be paid quarterly.[10] (Complaint at ¶¶ 15-16.) In fact, Plaintiff stated in his complaint that he *was paid* under the bonus structure he alleges for two quarters in 2010, so Defendant necessarily is aware of the agreement and underlying computations. (Complaint at ¶¶ 15-16.) Put simply, there is no good faith basis upon which Defendant may claim that the "alleged bonus lacks sufficient specificity." (Def. Mem. at 16. )

---

not sufficiently "clear and definite" to overcome the presumption of at-will employment in Illinois. *Id.* Again, as Mr. Ziccarelli is not seeking to enforce an offer of permanent employment, *Razdan* is analogous.

[9] In any event, Defendant is perfectly aware of the facts underlying the bonus structure alleged by Plaintiff. Not only are the financial documents in the Defendant's control, but these facts have been thoroughly flushed out during counsels' extensive settlement discussions.

[10] Defendant also misquotes the Complaint to create an ambiguity which Defendant then attacks. Plaintiff has not alleged a "guaranteed quarterly minimum" as Defendant suggests, but alleged that he was "guaranteed minimum quarterly bonuses." This language clearly indicates that Plaintiff would be paid a bonus at least every quarter, if not more frequently.

## E. Consideration Is Adequately Pled

As to consideration for the alleged promotion, Defendant correctly states that Plaintiff must refuse a job offer, relocate, or suffer a similar detriment. (Def. Mem. at 17.) That is the case here. For example, Mr. Ziccarelli was offered, and ultimately rejected, $160,000 per year to be the vice president of competitor AFC Worldwide Express in early 2010. The sole reason that Mr. Ziccarelli remained under the employ of Pilot was that Mr. Branov promised to promote Mr. Ziccarelli and match that salary. Indeed, Mr. Branov assured Mr. Ziccarelli that he was being temporarily couched in a district manager position so that he could gain the experience required by company policy for the vice president position. Defendant's intention to promote Mr. Ziccarelli was clear; Pilot even printed business cards designating Mr. Ziccarelli as vice president. (Complaint at ¶ 13.)

## F. There Was No Modification Precluding Plaintiff's Contractual Entitlements

Accordingly, Defendants' argument that Mr. Ziccarelli accepted a modified contract when he assumed the role of District Manager is also dispelled. The district manager position was not a new or modified contract, but was one of the conditions of the offer for Vice President. Defendants make the same modification argument with respect to Mr. Ziccarelli's bonus structure. This must also fail. As neither Plaintiff nor Defendant has alleged that Pilot offered him a smaller bonus, there can be no modified contract. [11]

---

[11] Similarly, Defendant's claim of modification and acceptance of the bonus structure approaches absurdity. By Defendant's argument, any time that an employer underpays or flatly refuses to pay an employee, but that employee continues to dutifully perform his job responsibilities, he would be deemed to have accepted a modified compensation scheme.

## IV.    Plaintiff Has Adequately Pled A Claim For Promissory Estoppel

Defendants reallege their previous breach of contract arguments and assert that, because no valid contract exists, any claim for promissory estoppel must also fail.  As Plaintiff has described above, the existence of a contract has been properly pleaded and he will not repeat these arguments.

Additionally, Defendants' claim that Mr. Ziccarelli has not alleged detrimental reliance is inaccurate.  First, Mr. Ziccarelli did, in fact, turn down a firm offer of employment from one of Defendants' rivals, AFC Worldwide Express.  Indeed, that is the reason Mr. Ziccarelli was offered the vice president position in the first place: Pilot was eager to retain his services and matched the salary offer Plaintiff received in order to do so.

However, refusal of a specific job is not the only allegation sufficient to constitute detrimental reliance.  In *Vajda v. Arthur Andersen & Co.*, 253 Ill. App. 3d 345, 350 (1st Dist. 1993), the plaintiff was offered a managerial position on a company project.   The plaintiff voiced his apprehension about accepting the position to his supervisor because of existing animosity with another member of the project.  *Id.*  Plaintiff's supervisor assured him that plaintiff had management's full support and plaintiff's position was secure.  *Id.*  Tensions on the project became predictably heightened, though, and plaintiff's adversary issued plaintiff a scathing review.  *Id.* at 351.  As a result, plaintiff was terminated.  *Id.*  Plaintiff alleged promissory estoppel on the theory that, if not for defendant's representations, he would have declined the project and if he had done so, he would still be employed.  *Id.* at 356.  Overruling the district court's grant of summary judgment for the defendant, the court of appeals found that the evidence was sufficient to constitute detrimental reliance.  *Id.*

*Vajda* is instructive here. If not for Defendant's false promises, Mr. Ziccarelli assuredly would have declined Defendant's offer and entertained the numerous other offers and conversations he was having regarding more profitable employment. Just as in *Vajda*, and as a direct result of Defendant's misrepresentations and false promises, Mr. Ziccarelli is now out of job. This is sufficient to allege detrimental reliance. *See also Moore v. Nutrasweet Co.*, 836 F. Supp. 1387, 1405 (N.D. Ill. 1993) (finding that, although plaintiff failed to allege a "clear and unambiguous promise" to successfully plead promissory estoppel, plaintiff's allegations that "she would have looked for other work and that perhaps she would not have stayed long enough to be terminated . . would be a nonfrivolous contention on the issue of detrimental reliance.").

## V. Plaintiff's Claims Under The Illinois Wage Payment And Collection Act Are Adequately Pled Against Phillips And Pilot

Defendants' argument for dismissal recites the elements of an Illinois Wage Payment and Collection Act ("IWPCA") claim and, once again, blankets the entire Complaint as insufficient. First, Defendants claim that the Complaint has not pleaded enough facts to bring Mr. Phillips within the definition of "employer," which encompasses any individual "acting directly or indirectly in the interest of an employer in relation to an employee[.]" Illinois Wage Payment and Collection Act, 820 ILCS 115/2. "Th[is] definition is quite broad," *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 116 (2005), and there can be little doubt that Pilot's President, Richard Phillips, Jr. falls within its purview. All of Gordon Branov's actions required Richard Phillips, Jr.'s advice or consent and thus he was acting directly or indirectly in the interest of Pilot in relation to Mr. Ziccarelli.

Defendants next allege that, because Mr. Ziccarelli has not properly pleaded the existence of an employment contract, his IWPCA claim must fail. For all of the reasons stated above, Mr. Ziccarelli has adequately alleged a contract on which his IWPCA claim is based.

25

Defendant finally contends Mr. Ziccarelli is not entitled to the salary for vice president that he was promised because it was never "earned." (Def. Mem. at 22.) Defendant correctly states that, to have earned the salary, Plaintiff must have "performed the service required." Def. Mem. at 22; *see Golden Bear Family Restaurants, Inc. v. Murray*, 144 Ill. App. 3d 616, 627 (1st Dist. 1986) (wages are due "when an employee renders service to an employer"). Mr. Ziccarelli agrees. In fact, Mr. Ziccarelli *did* perform the duties of vice president. As detailed more fully *supra*, Mr. Ziccarelli was assigned to the district manager role temporarily so that he could acquire the operational experience required for all vice presidents. The title of his role was strictly a formality; at all times Mr. Ziccarelli was performing the duties associated with the vice president position.

Accordingly, and because Defendant is required to "return those benefits he derives from the continued labor of the employee," Mr. Ziccarelli is entitled to compensation commensurate with the level of responsibility he assumed. *Arrez v. Kelly Serv. Inc.*, 522 F. Supp. 2d 997, 1002 (N.D. Ill. 2007). In this case, that amount is $160,000 per year. At the very least, Mr. Ziccarelli is entitled to the difference between his district manager salary and the promised vice president salary, or $65,000 per year. This is consistent with the IWPCA's primary objective: "the evil [the IWPCA] seeks to remedy is the forfeiture of [earned] benefits." *Mueller Co. v. Dept. of Labor*, 187 Ill. App. 3d 519, 524 (4th Dist. 1989).

## VI. Plaintiff Has Adequately Pled Claims For Negligence-Failure To Follow Articulate Procedures

Although Defendant's contend that *Wallace v. Xerox Corp.* is "squarely on point," that case involved a starkly different claim of negligence. The plaintiff in *Wallace* alleged damages that the court classified as "expectation interests" for his employer's failure to provide training and counseling as provided in the employee handbook. *Wallace v. Xerox Corp.*, No. 87-C-8810,

1988 WL 121622, at *4 (N.D. Ill. Nov. 8, 1988). Defendant is correct that the court found economic damages for disappointed expectations lies in contract (*Id.*), but that is not what Mr. Ziccarelli has alleged in this case. Rather, Mr. Ziccarelli has alleged that, due to Pilot's negligence in following its own policies, Ms. Cieplevicz was able to retain her employment and make false allegations about Mr. Ziccarelli that ultimately cost him his job, bargaining for a more favorable termination for herself at Mr. Ziccarelli's expense. Under Illinois law, defamation is a personal injury. Accordingly, the negligence demonstrated by Pilot proximately caused non-contractual injury to Mr. Ziccarelli, and this claim was properly pleaded. Indeed, the *Wallace* court did not find that a negligence action may never be brought for violations of a personnel handbook. It assumed for the purposes of analysis that "the four elements of a negligence case [had] been properly pleaded." *Id.*

VII.  **Plaintiff Has Adequately Pled Claims For Negligence-Failure To Ensure A Safe Workplace**

Defendants rely on the Illinois Workers' Compensation Act to claim that Mr. Ziccarelli's negligence claim for failure to insure a safe workplace is preemptive. The IWCA essentially bars an employee from bringing a common law cause of action against his or her employer unless the employee-plaintiff proves: (1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act. *Meerbrey v. Marshall Field & Co., Inc.*, 139 Ill. 2d 455, 463 (1990).

Here, it is clear that the injury for which Mr. Ziccarelli complains was not accidental. Pilot, for reasons which cannot be fully known absent discovery, chose to retain Ms. Cieplevicz for a number of weeks even though it should have (and apparently back in May of 2012 decided to) terminate Ms. Cieplevicz thus allowing her to remain at Pilot notwithstanding that she had

already demonstrated her willingness to physically assault Mr. Ziccarelli's girlfriend. Mr. Ziccarelli was understandably upset by having to work with Ms. Cieplevicz in the following weeks and was extremely upset when he was terminated for reasons that were perpetrated by Ms. Cieplevicz while she continued to work at Pilot. Mr. Ziccarelli's injuries were directly caused by Pilot allowing Ms. Cieplevicz to remain on as an employee through the middle of July, and on information and belief the date before Mr. Ziccarelli was terminated. Moreover, it is not at all clear that the Act applies to the facts of this case since Mr. Ziccarelli's injuries did not necessarily rise from his employment at Pilot but as a result of Ms. Cieplevicz remaining an employee at Pilot. Finally, Defendants have cited to no statutory language or supporting case law that would even remotely suggest that Mr. Ziccarelli's claims here are preempted under the IWCA.

Defendants' final argument simply claims that Mr. Ziccarelli's negligence claim for failure to insure a safe workplace fails to state a recognized cause of action. Defendants cite no authority for this proposition and indeed none exist. To the contrary, this claim is appropriately analyzed under the elements of the negligence claim (duty, breach, proximate cause, and damages), all of which Plaintiff has adequately alleged. (See Complaint at ¶¶ 92-99.) Defendants' Motion to Dismiss Count VII should be denied.

## CONCLUSION

Now is not the time for Mr. Ziccarelli to prove his case. He will do so in short order. For now, all that is required are facts and reasonable inferences sufficient to put Defendants' on notice of claims that could have happened. It is submitted that the Complaint as it currently stands meets the pleading requirement of the Federal Rules of Civil Procedure and Illinois Law, and thus Defendants' Motion should be denied in its entirety. Alternatively, Mr. Ziccarelli should

be afforded an opportunity to amend his Complaint to address any deficiencies that are found to exist by the Court.

Dated: February 22, 2013

Respectfully Submitted,

BENEDICT ZICCARELLI, Plaintiff.


By: /s/ Joseph L. Kish
          One of His Attorneys


Joseph L. Kish (ARDC #6197916)
Synergy Law Group, L.L.C.
730 West Randolph St., 6th Floor
Chicago, Illinois 60661
Phone: (312) 454-0015
Fax: (312) 454-0261